[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 18, 2007
THOMAS K. KAHN
CLERK

No. 05-12540

_____

D. C. Docket No. 03-20684-CV-JEM

DA MORTGAGE, INC.,
A Florida Corporation,

                                                      Plaintiff,

136 COLLINS AVENUE, L.C.,
A Florida Corporation,

                                                      Plaintiff-Appellant,

                              versus

CITY OF MIAMI BEACH,
A Florida Municipal Corporation,
MIAMI-DADE COUNTY,

                                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 18, 2007)**

Before TJOFLAT, FAY and SILER, * Circuit Judges.

_____

*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

FAY, Circuit Judge:

Appellant ("L.C."), a Miami Beach nightclub owner challenges the constitutionality of a Miami-Dade County ("County") noise ordinance that the City of Miami Beach ("City") attempted to enforce against the appellant. L.C. owns and operates Opium Garden, a 20,000 square-foot dance club that occupies the atrium of a two-story building at 136 Collins Avenue on Miami Beach. L.C. subleases the premises from DA Mortgage, Inc. ("DA Mortgage"), which holds a lease on the property.

The appellant's complaint arose when the City began to cite the club for violating a County noise ordinance in November of 2001. Over the course of the next six months, the City cited L.C. d/b/a Opium Garden for violating the County noise ordinance, section 21-28(b) of the County Code, on ten separate occasions.[1] It never cited DA Mortgage, however. In February of 2002, the City scheduled an administrative hearing on the citations, notifying L.C. that its repeated violations of the noise ordinance appeared to be "irreparable and irreversible in nature." The City postponed the scheduled hearing for March of 2003. Before the hearing occurred, L.C. and DA Mortgage filed a nine-count complaint against both the City

---

[1]The noise ordinance at issue here appears in Chapter 21, art. IV, § 21-28(b) of the Miami-Dade County Code. Since the parties and the district court refer to the ordinance as § 21-28(b), we use that reference throughout this opinion.

and the County in the circuit court for Dade County, Florida pursuant to 42 U.S.C. § 1983. The plaintiffs asserted that the defendants had violated their First Amendment rights to free speech and their Fourteenth Amendment rights to due process. They requested declaratory relief, injunctive relief and damages.

The defendants removed the case to federal district court and each later filed separate motions for summary judgment. The plaintiffs filed a cross-motion for summary judgment. Before the parties proceeded to oral argument on the summary judgment motions, the plaintiffs waived several of the counts asserted in their nine-count complaint. The district court granted both the County and the City summary judgment, ruling that the County ordinance was constitutional on its face and that the City's enforcement provisions also passed constitutional muster.

Thereafter, L.C. filed an appeal with this Court, addressing only five of the eight counts remaining under its original complaint.[2] In the interim, the City repealed its own noise ordinance and adopted the County noise ordinance in its place, mooting one of the five counts brought forward on appeal. For the reasons stated below, we affirm the district court decision to award both the County and the City summary judgment in this case.

## I. ISSUES CURRENTLY STILL ON APPEAL

[2]The court dismissed plaintiff DA Mortgage's claims for lack of standing because neither the City nor the County had ever cited this plaintiff for any violations of the County ordinance.

Before we proceed with our review, we note several developments that have affected the issues on appeal and the manner in which we will structure our analysis.

**A. Recent Amendments to the City Code Moot One of Appellant's Claims**

After the appellant filed this appeal, the City adopted comprehensive amendments to its noise ordinance that have mooted at least one of the five claims on appeal.[3] In count IV of their complaint, the plaintiffs challenged the City's authority to vest special masters with the power to adjudicate alleged violations of County ordinances such as the County noise ordinance at issue here. The plaintiffs argued that section 162.03, Florida Statutes, only allowed the City to "designate enforcement methods and penalties to be imposed for violation of ordinances adopted by the municipality." Since the City had never formally adopted the County noise ordinance as its own, the plaintiffs maintained that the County's ordinance violated Florida law. Accordingly, they asked the court to declare that sections 30-1(b) and 30-2 of the City Code, which established an alternate code enforcement system that vested special masters with the authority to enforce City and County ordinances alike, were null and void and to enjoin their use.

---

[3]The City of Miami Beach passed and adopted comprehensive amendments to its noise ordinance via Ordinance No. 2006-3511 on March 8, 2006. A copy of the ordinance appears attached to L.C.'s initial appellate brief as "Exhibit B."

After L.C. filed this appeal on May 3, 2005, the City repealed its own noise ordinance and formally adopted the County noise ordinance in its place. Since the County noise ordinance is now officially a municipal ordinance, the City may enforce compliance by the methods specified in sections 30-1(b) and 30-2 of its Code without violating Florida Statutes. The City has corrected the constitutional infirmity that allegedly plagued these sections of its Code. At oral argument on the motions for summary judgment the plaintiffs conceded that the City could cure the constitutional infirmity in its alternate code enforcement provisions if it adopted the County ordinance.[4]

A change in statute will not always moot a constitutional claim, however. If a litigant asserts damages from the application of a constitutionally defective statute, he may be able to pursue his constitutional challenge notwithstanding later legislative changes that would appear to address his complaint. *See Naturist Soc., Inc. v. Fillyaw*, 958 F.2d 1515, 1519 (11th Cir. 1992); *see also Camp Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1264 (11th Cir. 2006). Damage claims can save a § 1983 claim from mootness,[5] but only where such claims allege

---

[4]At hearing on the motions for summary judgment, counsel for the plaintiffs, Mark Greenberg, Esquire, stated "[t]here is no question that the City if it adopts a County ordinance or if there is an inter-local agreement between the County and the municipality can enforce a County code."

[5]*See Crown Media, LLC v. Gwinnett County*, 380 F.3d 1317, 1325 (11th Cir. 2004), which notes that where a plaintiff has requested damages in connection with a constitutional

compensatory damages or nominal damages for violations of procedural due process. See *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 310 (1986), which notes that the basic purpose of damages under § 1983 is compensatory and that absent proof of actual injury, courts can only award nominal damages. See also *Carey v. Piphus*, 435 U.S. 247, 266-267 (1978), which endorses nominal damages awards in § 1983 actions only to vindicate certain "absolute rights" such as the right to procedural due process. Although count VI of L.C.'s complaint requested damages in connection with count IV, it did not allege any facts that would connect its damage claim to a City enforcement proceeding under sections 30-1(b) or 30-2.[6]

The record indicates that the City never actually applied this section of its Code against L.C.. It never held a hearing on L.C.'s citations. L.C. does not dispute this fact, and acknowledged it once more for the record during oral argument before this Court. L.C. appears to have based its claim for damages on the threat that the City might prosecute it for violations of the County noise ordinance.

---

claim, such a request may save an otherwise moot constitutional claim.

[6]L.C. stated the basis for its damages claim in count VI as follows: "This count is specifically for damages resulting from the Defendant City of Miami Beach's enforcement of Sections 30-1(b) and 30-2 of the Miami Beach City Code." Complaint, Part V, Count VI, ¶ 36. Nothing in the remainder of the Complaint suggests that compensatory damages would be in order. L.C. did not allege that it had to close its business, suffer a reduction in clientele, diminution in revenue, or a slight to its commercial reputation as a result of the citations.

Plaintiffs cannot bring prospective damage claims under 42 U.S.C. § 1983, however. See *Tanner Advertising Group v. Fayette County*, 451 F.3d 777, 786 (11th Cir. 2006), where this Court held that facial challenges regarding prospective harm cannot give rise to the remedy of damages. *See also Adler v. Duval County School Board*, 112 F.3d 1475, 1478 (11th Cir. 1997) (noting that appellants' claim for money damages continued to present a controversy because it did not depend upon any threat of future harm).

Likewise, although the plaintiffs alleged in count V of the Complaint that sections 30-1(b) and 30-2 of the City Code violated their rights to due process under the Fourteenth Amendment, they do not allege a procedural due process claim. The Complaint states that these sections of the City Code violate due process concerns to the extent that they adopt the County noise ordinance, which they allege is unconstitutionally vague and overbroad. Thus, the plaintiffs frame count V in terms of substantive due process, not procedural due process. However, as we have noted, only damage claims predicated on violations of procedural due process are compensable under § 1983. *See Carey*, 435 U.S. at 266-67. Accordingly, L.C.'s damage claim, count VI, will not save its constitutional claim against the City from mootness and both claims must fail.

**B. Appellant's Entire Case May Be Moot If All Citations Are Closed**

The record indicates that the City withdrew all of the Notices of Violation that gave rise to this Complaint during negotiations over a possible pre-trial settlement in May of 2004. Defendant City of Miami Beach's Response To Order To Show Cause, May 5, 2002, at 2. The plaintiffs filed their complaint on March 24, 2003, challenging the citations that the City issued between November 2001 and February 2002. They appended a list of the citations to the Complaint as "Exhibit A." The City continued to cite L.C. for violating the County noise ordinance after February 2002, however. Yet, L.C. never amended its complaint to include these additional citations.

From May 2002 through April 2003, the City cited L.C. for thirteen additional violations of the County noise ordinance, and in August of 2003, it scheduled a hearing to suspend L.C.'s business license on account of these newly alleged violations. 136 Collins Avenue, L.C. Statement of Undisputed Material Facts, March 29, 2004, Composite Exhibit 2. The City scheduled the license suspension hearing for September 11, 2003. On September 8, 2003, L.C. filed for a temporary injunction in the circuit court for Dade County to halt the scheduled licensing proceeding. The circuit court issued a temporary injunction on October 30, 2003.

Thereafter, the City rescheduled a special master hearing on the violations for April 22, 2004. This hearing never took place, however. When the parties filed their Joint Pre-Trial Stipulation of the Facts on May 4, 2004, they stated that "on or about April 27, 2004" the City had closed the Notices of Violation for all thirteen citations issued between May 2002 and April 2003 and withdrawn the scheduled special master proceedings. Joint Pretrial Stipulation by DA Mortgage, 136 Collins Avenue, City of Miami Beach, Miami-Dade County, May 5, 2004, Part V, ¶ 9, note. According to the parties, the only Notice of Violation concerning section 21-28 of the County Code that remained open at this point was one issued to L.C. on March 22, 2004. *Id*.

The parties make no reference to this citation in their appellate briefs and the record offers no more information on the status of this notice. The City simply maintains that it has withdrawn all citations that it issued to L.C. pursuant to the County noise ordinance. L.C. asserts in its reply brief that one citation—CE05001965— remains open, but concedes in a footnote that based "[u]pon information and belief, the open violation is a duplicate of 1[sic] City closed." Appellant's Reply Brief, September 14, 2006, at 1 n.2. The appellant directs this Court to addendum 2 of its reply brief, which consists of a print-out from the search engine on the City Code Compliance database. The search was

9

executed on September 8, 2006, according to the print-out. It shows that CE05001965, which was issued on January 31, 2005, was still "OPEN" as of September 8, 2006. *Id*. at addendum 2.

Yet addendum 3 of the same appellate brief, which provides a copy of an email from the Assistant City Manager to City Code Compliance personnel, states that noise violation notice CE05001965 issued 1/31/05 has been closed. *Id*. at addendum 3. It also states that the special master's office has been informed that no further action is required. *Id*. The City Manager's email predates the print-out from the City Code Compliance database by several weeks. *Id*.

The parties did not clear up the dispute during oral argument. The City insisted that all Notices of Violations issued pursuant to the County noise ordinance had been closed, and if not, that it was the City's intent to withdraw them. The appellant insisted that one notice remained open and that they had standing to challenge the constitutionality of the County noise ordinance based on this one outstanding notice.

Since the record is unclear, we proceed with this analysis on the arguable assumption that the City issued L.C. one Notice of Violation with respect to the County noise ordinance that still remains open.[7]

---

[7]It is unfortunate that competent counsel cannot advise this Court whether or not there is an outstanding citation against L.C.. Frankly, this is beyond our understanding and disappointing.

**C. Appellant's Challenge to the Noise Ordinance is a Facial Challenge**

Although L.C. argues in its appellate brief that it is challenging the constitutionality of the County noise ordinance either facially or as applied, Appellant's Initial Brief, at 1, we examine the plaintiff's cause of action for what it actually is, not for what the plaintiff would have it be. *See McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994), *cert. denied*, 513 U.S. 1110 (1995). Thus, we note at the outset, that neither the City nor the County has ever prosecuted L.C. for violating this ordinance. The County has never even threatened to prosecute L.C. with a noise violation. This fact is not in dispute and L.C. conceded it again during oral argument on its appeal. Nor has L.C. alleged that the ordinance operates to discriminate against nightclubs as opposed to other businesses or residents. Indeed, the Complaint states that "[p]laintiffs are challenging the statute as facially unconstitutional" and asks the court to invalidate the ordinance.

As this Court noted in *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000), "[a] facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulations itself." And, when a plaintiff mounts a facial challenge to a statute or regulation, the plaintiff bears the burden of proving that the law could never be applied in a constitutional manner. *Jacobs v. The Florida Bar*, 50 F.3d 901, 906 n.20 (11th Cir. 1995). This is because a party

11

who asserts a facial challenge to a statute is seeking not only to vindicate his own rights, but also those of others who may be adversely impacted by the statute. *Horton v. City of St. Augustine*, 272 F.3d 1318, 1331 n.12 (11th Cir. 2001) (citing *City of Chicago v. Morales*, 527 U.S. 41, 55 n.22 (1999)).

Where plaintiffs challenge the validity of a statute because they seek to vindicate their own rights, however, the challenge is "as-applied." *Jacobs*, 50 F.3d at 906. The only "as-applied" challenge alleged in the Complaint was a due process challenge to certain sections of the City Code which authorized the use of "special masters" for enforcing code compliance (count IV). As we discussed above, this particular constitutional claim is now moot. Thus, at present, L.C.'s sole challenge to the constitutionality of the County noise ordinance is a facial challenge. L.C. presents three arguments for finding the ordinance unconstitutional on its face: 1) that it is not content-neutral or if so, that it does not contain permissible time, place and manner restrictions on speech; 2) that it is overly broad; or 3) that it is vague.

**D. Remaining Claims Turn on the Validity of the County Noise Ordinance**

Finally, we note that the substantive due process violation alleged against the City in count V of the Complaint must fail if we find that the appellant's facial challenge to the County noise ordinance, which is alleged in count II of the

Complaint, lacks merit. Similarly, count III of the Complaint, which alleges damages arising out of the constitutional claim in count II, must also fail if we find that the appellant's facial challenge to the County noise ordinance lacks merit. Thus, we proceed to a discussion of the facts and an analysis of counts II, and III against the County and count V against the City. These are the only issues remaining before us on appeal. And, we note that our analysis of the merits of L.C's facial challenge to the County noise ordinance, count II of the Complaint, will be dispositive of the other two claims.

## II. BACKGROUND

L.C. operates the Opium Garden dance-club at 136 Collins Avenue, alongside the Opium Restaurant and Prive, a private club for celebrities. All three ventures are located within the same building: a two-story structure that features a huge open-air atrium at its center. Opium Garden occupies this cavernous atrium area, which can seat up to 1800 persons, and entertains its patrons with a mix of recorded music. L.C. subleases the premises from DA Mortgage, Inc. ("DA Mortgage"), which leases the property from Lawrence Kaine. DA Mortgage holds a certificate of use from the City that recognizes a nightclub as a conforming use of the property.

The 136th block of Collins Avenue has hosted various nightclubs since 1994; the Opium Garden is the latest in a series of such ventures. L.C. obtained a license to operate a nightclub and restaurant on the premises of 136 Collins Avenue in 1998 and the license allows it to serve alcohol there until 5:00 a.m. L.C. operated Opium Garden under this license without major incident until November of 2001.

On November 19, 2001, the City issued L.C. a citation for violating section 21-28(b) of the County Code, which addresses "unnecessary and excessive" noises. The ordinance prohibits persons from operating "[r]adios, televisions, phonographs" and like-manner of sound reproducing devices and musical instruments in such a manner "as to disturb the peace, quiet and comfort of the neighboring inhabitants." MIAMI-DADE COUNTY, FL., CODE § 21-28 (b) (1958, as amended 1996). Alternatively, the ordinance prohibits persons from operating sound devices at a "louder volume than is necessary for convenient hearing" of voluntary listeners within the room, vehicle or chamber where the sound device is located. *Id*. The ordinance adopts a presumptive standard for determining whether a noise is unnecessary or excessive: if a sound device is plainly audible between the hours of 11:00 p.m. and 7:00 a.m. 100 feet away from its source (the building or vehicle where the device is being operated). *Id*.

14

From November 19, 2001 through February 11, 2002, L.C. received ten additional citations for violating the County noise ordinance. The nightclub received another six citations within the month of January alone. The City did not assess any fines against L.C. at the time. On February 12, 2002, however, the City sent L.C. a notice that it considered the violations to be "irreparable or irreversible in nature" and that it would schedule a hearing before a special master for February 28, 2002. The hearing notice advised L.C. that the special master could impose a fine of up to $15,000.00 per irreparable violation and that failure to pay a fine could result in the placement of liens and ultimately foreclosure. The record does not indicate why a hearing did not take place in February of 2002, but the plaintiffs indicate in their complaint that the City had rescheduled the hearing for late March 2003.

In the intervening period, the City continued to cite L.C. with violations of the County noise ordinance. In total, it cited L.C. for eleven additional violations of the County noise ordinance between May 10, 2002 and March 20, 2003. Then, on March 24, 2003, L.C. and DA Mortgage filed a 42 U.S.C. § 1983 action against the City and the County in the circuit court for the Eleventh Judicial Circuit for Dade County, Florida. The plaintiffs alleged that the defendants had violated their

15

rights to free-speech and due process under the First and Fourteenth Amendments of the Constitution.

The City removed the case to federal district court that same day, March 24, 2003, on the grounds that it presented a federal question. The plaintiffs' complaint specifically mentioned only eleven citations—the ones which the City issued between November 21, 2001 and February 11, 2003 and which were still pending adjudication before a special master. The plaintiffs' complaint did not reference the additional citations that L.C. received between May 2002 and March 2003.

As we noted in the preface to this discussion, L.C. only appealed the district court's decision to award the City and the County summary judgment on counts II, III, IV, V and VI of its complaint. Subsequent actions by the City have mooted count IV and the record plainly indicates that the associated damages claim alleged in count VI is untenable. Thus, this recitation of the facts only summarizes counts II, III and V.

In Count II of the Complaint, the plaintiffs challenge the constitutionality of section 21-28(b) of the County Code, which addresses excessive noise. The record indicates that the City cited L.C. for violating this ordinance at least 26 times from November 2001 though January 2005, although the Complaint references only the first eleven citations. The plaintiffs request a declaratory judgment that § 21-28 of

16

the County Code violated their First Amendment rights to free speech and a permanent injunction to prevent either the City or the County from enforcing this noise ordinance. Count III of the plaintiffs' complaint requests damages for the constitutional violation alleged in count II.

Count V addresses problems with enforcement provisions in the City Code, specifically sections 30-1(b) and 30-2. These sections of the City Code establish an alternate code system employing "special masters" and vest those masters with the power to enforce both City and County Code violations. The plaintiffs contend that any attempt to apply these sections of the City Code to enforce the County noise ordinance would violate due process, since the underlying ordinance is allegedly overly broad and void for vagueness. Accordingly, the plaintiffs ask the court to declare that these sections of the City Code violated both the United States Constitution and the Florida Constitution and to permanently enjoin the City from enforcing them.

On February 17, 2004, nearly one year after the plaintiffs filed their complaint, the County filed a Motion for Summary Judgment. The County limited its motion to counts II and III of the Complaint since the plaintiffs did not allege that the County attempted to enforce its ordinance against them. On March 29, 2004, the plaintiffs filed a Cross-Motion for Summary Judgment against both the

County and the City. The City filed its own Motion for Summary Judgment on March 30, 2004. The court scheduled oral argument on the motions for July 26, 2004.

On May 4, 2004, the parties filed a Joint Pretrial Stipulation which did not address counts I, VII, VIII or IX of the Complaint, signifying that the plaintiffs conceded to summary judgment on these counts. The parties also filed a Joint Statement of Supplemental Undisputed Material Facts in Support of Motions for Summary Judgment, citing changes in the facts that gave rise to the claims in the plaintiffs' Complaint. The parties stipulated that the City had closed the Notices of Violation which it issued to the nightclub between May 2002 and April 2003 without adjudicating the notices. They also stated that the City had withdrawn the special master proceedings and the Licensing Complaint that it brought pursuant to these citations. The parties further stipulated that the City issued the nightclub a Notice of Violation for allegedly failing to comply with section 21-28 of the County Code on March 22, 2004 and the nightclub had requested a hearing before a special master to contest this notice.

This joint statement of supplemental undisputed material facts did not reference the citations named in the plaintiffs' Complaint—those that dated from November 2001 through February 2002. However, the City did reference these

18

citations in a later filing with the court, which dated to May 5, 2004. When the court issued the City an Order to Show Cause for failing to submit the Joint Pretrial Stipulation in a timely manner, the City explained it had been negotiating a possible settlement of the dispute. The City stated that it had closed and withdrawn the Notices of Violation which gave rise to the Complaint in this action during the settlement discussions.

On July 26, 2004, the district court heard oral argument on all the motions for summary judgment. On November 28, 2004, the district court awarded the County summary judgment, and on March 31, 2005, it awarded summary judgment to the City. The court dismissed plaintiff DA Mortgage's claims for lack of standing, observing that neither the City nor the County had ever cited this plaintiff for violating the County noise ordinance. L.C. filed a Notice of Appeal before this Court on May 3, 2005, arguing that the district court erred by granting summary judgment to the defendants on counts II, III, IV, V, and VI of the Complaint. Before we heard oral argument on this appeal, the City corrected the constitutional defect alleged in count IV of the Complaint, by formally adopting the County noise ordinance into the City Code.

### III. STANDARD OF REVIEW

We review the district court's ruling on a motion for summary judgment *de novo*, and adhere to the same legal standards that bound the district court. *National Fire Insur. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003), *cert. denied*, 540 U.S. 873 (2003). *See Sarfati v. Wood Holly Assocs.*, 874 F.2d 1523, 1525 (11th Cir. 1989); *Carlin Communication Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986).

Rule 56(c) of the Federal Rules of Civil Procedure provides that a district court should grant summary judgment if the record, including pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, fails to disclose any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *National Fire Insur. Co.*, 320 F.3d at 1267. The moving party bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As we review the record on a motion of summary judgment, we draw all reasonable inferences that can be sustained by the record and evaluate those inferences in the light most favorable to the non-moving party. *See Whatley v. CNA Ins. Cos.*, 189 F.3d 1310, 1313 (11th Cir. 1999).

## IV. DISCUSSION

## A. Appellant's Facial Challenge: Restriction on Speech Is Content-Based

## 1. Threshold Consideration: Is the Conduct Constitutionally Protected?

As a threshold matter, we must ask whether the First Amendment protects the conduct at issue in the challenged ordinance—playing or broadcasting recorded music. It does. The Supreme Court has clearly stated that the First Amendment protects music, as a form of speech and expression, from governmental censorship and control. *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1981). Although the First Amendment protects the right to broadcast recorded music, the government may, nevertheless, impose reasonable restrictions on the time, place and manner in which persons exercise this right, subject to certain provisos. Those provisos are that: 1) the restrictions are content-neutral; 2) they are narrowly tailored to serve a significant governmental interest, and 3) they leave open ample alternative channels of communication. *Ward*, 491 U.S. at 791.[8]

The ordinance at issue here does not contain any blanket prohibitions on the right to play or broadcast music. The ordinance regulates sound volume according to a standard that addresses the needs of two different audiences—a nuisance standard for involuntary listeners and what is presumably a public health standard for voluntary listeners. It prohibits the use or operation of sound equipment such

---

[8]Ordinances that regulate speech based upon the content of the message are presumptively unconstitutional and are subject to a higher level of scrutiny as a result. *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258-59 (11th Cir. 2005).

as radios, phonographs and televisions in such "manner as to disturb the peace, quiet and comfort of the neighboring inhabitant, or at any time, with louder volume than is necessary for convenient hearing for the person or persons who are in the room, vehicle or chamber in which such machine or device is operated and who are voluntary listeners thereto. " MIAMI-DADE COUNTY FL., CODE § 21-28(b) (1958, as amended 1996).

L.C. argues that the ordinance is invalid on its face because it restricts the volume at which individuals may play recorded sounds based upon the content of the recordings. Alternatively, L.C. argues that even if the ordinance is deemed to be content-neutral, it fails to satisfy the constitutional requirements for regulating time, place and manner of speech.

### *2. Is the Ordinance Content-Based or Is it Content-Neutral?*

The first-step in evaluating the constitutionality of an ordinance which restrains protected speech or expression is to determine whether the government is proscribing the speech because it disfavors the message. *Ward,* 491 U.S. at 791; *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1258 (11th Cir. 2005). In such a case, courts will subject the ordinance to strict scrutiny analysis. *Solantic*, 410 F.3d at 1258. If, however, the ordinance is content-neutral, courts will analyze it according to intermediate scrutiny (prongs 2 and 3 of the test articulated in

*Ward*). The government's purpose is the controlling consideration at this stage of the inquiry. *Ward*, 491 U.S. at 791. Government regulation of expressive activity is content-neutral so long as it is "justified without reference to the content of the regulated speech." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984).

Accordingly, when we apply this standard to the ordinance at issue, we find, as the district court did, that the ordinance is content-neutral. On its face, it does not disallow certain types of recorded noise or particular viewpoints. It does not distinguish, for example, between excessively loud singing, thunderous classical music recordings, reverberating bass beats, or television broadcasts of raucous World Cup soccer finals. It simply prohibits excessively loud noise from recorded sources, whether radio, television, phonographs, etc.

Although L.C. argues that the ordinance is not content-neutral because it sets vague standards for what constitutes "unreasonably loud, excessive, unnecessary or unusual" noise, which invite subjective enforcement based upon content of the sound, the government's purpose is controlling. *See Ward*, 491 U.S. at 791. L.C. did not allege that the County adopted the ordinance because it wanted to silence music with a certain content such as dance-club music, and the text of the ordinance is facially neutral.

**B. Alternative Argument: Impermissible Time, Place, & Manner Restrictions**

1. *Does the County Have a Significant Government Interest at Stake*?

Having determined that the County noise ordinance is content-neutral, we may now review the ordinance to see whether it contains permissible time, place and manner restrictions. The pertinent test requires that we apply intermediate scrutiny as our standard of review—whether the ordinance is narrowly tailored to achieve a significant government interest and leaves open ample alternative channels of communication.

In their Joint Pretrial Stipulation, the parties stated that the "[g]overnment has a substantial interest in protecting citizens from unwelcome noise." The Supreme Court has endorsed this view, noting that the government may act to protect traditional public fora such as city streets and parks from excessive noise. *Ward*, 491 U.S. at 796.[9] Accordingly, we find, as the district court did, that the County has a significant government interest in regulating reproduced sound.

*2. Is the Ordinance Narrowly Tailored to Achieve the Government Interest?*

---

[9]Additionally, we note that the U.S. Congress enacted the Noise Control Act of 1972 ("NCA"), 42 U.S.C. §§4901-4918, to protect Americans from noise that jeopardizes their health and welfare, § 4901(b). It amended the NCA in 1978 with the Quiet Communities Act, 42 U.S.C. § 4913. This amendment provided financial and technical assistance to state and local governments so that they could enact more effective noise ordinances. Although neither the parties nor the court make reference to these federal acts, we consider the fact that they exist to be pertinent to the question of government interest.

Once we have satisfied ourselves that the ordinance reflects a significant government interest, we must ask whether the government narrowly tailored the ordinance to achieve that interest. The Supreme Court has emphasized that the government does not need to show the regulation utilizes the least restrictive means of achieving the government interest. A speech-restrictive regulation will satisfy this requirement so long as it "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 798-799 (footnote omitted) (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)).

Section 21-28 of the County Code addresses "excessive" noise in a comprehensive fashion. It regulates noises from such disparate sources as the horns and signaling devices that generate traffic noise to power tools and landscaping equipment used for residential maintenance, and from the noises emitted by caged animals to raucous shouting on residential streets. The subsection that regulates noise from devices that reproduce sounds such as televisions, radios, phonographs and musical instruments contains a standard that is specifically tailored to that particular category of sound. Thus, it proscribes unreasonably loud noise in terms that address the needs and welfare of both involuntary and voluntary listeners, making it unlawful to use sound reproduction devices:

in such a manner as to disturb the peace, quiet and comfort of neighboring inhabitants, or at any time louder that is necessary for convenient hearing for the person or persons who are in the room, vehicle or chamber in which such machine or device is operated and who are voluntary listeners thereto.

*Id*. at § 21-28(b). It also sets forth a rebuttable presumption to aid compliance officers in enforcing the standard:

The operation of any such set, instrument, phonograph, machine or device between the hours of 11:00 p.m. and 7:00 a.m. in such manner as to be plainly audible at a distance of one hundred (100) feet from the building, structure or vehicle in which it is located shall be prima facie evidence of a violation of this section.

*Id.* Accordingly, we find that the ordinance is narrowly tailored.

### *3. Does the Ordinance Leave Open Ample Alternative Channels of Expression?*

The last factor that we must consider in evaluating the validity of the ordinance's time, place and manner restrictions on reproduced sounds is whether it leaves open ample channels for alternative expression. We find that it does. The ordinance does not impose a total ban on the use of reproduced sound devices. It only restricts the volume at which these devices may operate so as not to intrude on the peace and quiet of neighborhood residents or affect the comfort of voluntary listeners. Nor does the ordinance bar the use of devices that reproduce sound at certain times of the day or prohibit persons from operating them within certain areas of the county. The Supreme Court upheld a municipal guideline that

26

addressed sound amplification for concerts at public parks for this very reason, noting that the guideline "[d]oes not attempt to ban any particular manner or type of expression at a given place or time." *Ward*, 491 U.S. at 802.

L.C. argues that the ordinance fails to leave it any effective way to communicate music outdoors and that the City has licensed it to operate Opium Garden as an open-air entertainment venue. Opium Garden is not an open-air venue in the way that a ballfield grandstand is, however. The record indicates that L.C. operates the club from the open atrium of a two-story structure. The surrounding structure, which is roofed and which houses a restaurant, offices and other clubs, walls off the atrium from the public street outside, and undoubtedly blocks much of the noise that emanates from the atrium. The ordinance does not prohibit L.C. from communicating music into the open-air atrium of its building, it prohibits it from disturbing the neighbors with music that is plainly audible well outside the building. L.C. need only lower the volume to comply. This should not impact the ability of the patrons to hear and enjoy whatever is being played.

Similarly, those who wish to listen to their televisions, phonographs, or radios at a volume that would be prohibitively loud under the ordinance are not precluded from listening through headphones or wireless devices and those who wish to share their music, television broadcasts and the like with guests, passengers

27

or patrons need only lower the volume. There is nothing unreasonable about accommodating the interests of all concerned.

In view of these facts, we affirm the district court's ruling on the validity of the County noise ordinance, section 21-28(b) of the County Code. The County noise ordinance is content-neutral and it sets permissible time, place and manner restrictions on the use of sound reproduction devices. It conforms to the requirements of the First Amendment.

## C. Alternative Facial Challenge: The Overbreadth Exception

Even if the ordinance contains permissible time, place and manner restrictions and is content-neutral, L.C. urges the court to invalidate it on overbreadth grounds. As general rule, those who challenge the validity of a statute on facial grounds "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "The fact that [a legislative act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid. . . ." *Id*.

However, the Supreme Court has carved out a narrow exception to this rule in what is known as the "overbreadth doctrine," which allows a litigant to assert a facial challenge to a statute because it could compromise the First Amendment rights of parties not before the Court. *Horton v. City of St. Augustine*, 272 F.3d

1318, 1331 (11th Cir. 2001) (citing *Salerno*, 481 U.S. at 745); *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1972). Thus, the litigant challenges the statute on facts that apply to others. *Camp Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir. 2006). The Court reserves this exception for cases involving restrictions on the right to free speech. *Horton*, 272 F.3d at 1331 (citing *Salerno*, 481 U.S. at 745). The rationale behind the exception is that "the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Id.* (quoting *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 129 (1992)).

Accordingly, the Supreme Court has permitted facial challenges based on overbreadth where an ordinance delegates overly broad discretion to enforcement officers, creating an "impermissible risk of suppression of ideas" in every application, and where an ordinance "penalizes a substantial amount of speech that is constitutionally protected." *Forsyth*, 505 U.S. at 129-30 (citations omitted). In general, however, the Supreme Court and this Circuit have only applied the exception in cases where the ordinance makes access to a forum for speech contingent upon issuance of a license or permit. *Horton,* 272 F.3d at 1331-32; *See* also *United States v. Frandsen,* 212 F.3d 1231, 1236 (11th Cir. 2000); *Cannabis*

*Action Network, Inc. v. City of Gainesville*, 231 F.3d 761, 768 (11th Cir. 2000)*, vacated on other grounds,* 534 U.S. 1110 (2002) (citing *Ward*, 491 U.S. at 793).

Neither of these situations applies to the ordinance being challenged here. Section 21-28 of the County Code does not impose prior restraint features on speech. It does not establish a permitting or licensing regime that would make the use of sound reproduction devices contingent upon issuance of a County or City permit. *See Cannabis Action Network*, 231 F.3d at 770 (noting that the key to determining whether a statute qualifies as a prior restraint is whether it authorizes the suppression of speech in advance of its expression). Nor does the ordinance impose criminal penalties for playing a sound reproduction device at excessively loud volume. The County imposes a civil fine of $100.00 for excessive noise violations. MIAMI-DADE COUNTY, FL., CODE § 8CC-10 (1985, as amended 2005).

We believe there is little risk that the ordinance, by its very existence, would lead third parties to censor their own speech. *See Members of City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 799 (1984) (noting that "[i]n order to decide whether the overbreadth exception is applicable in a particular case, we have weighed the likelihood that the statute's very existence will inhibit free expression"). Thus, as a threshold matter, it is not clear that L.C.'s overbreadth

challenge falls within the parameters of the overbreadth doctrine. *See Ward,* 491 U.S. at 793.

Moreover, to prevail on an overbreadth challenge, a litigant must show "from the text of [the law] and from actual fact," that substantial overbreadth exists. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003), quoting *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988). It is not sufficient to demonstrate that there is a possibility of unconstitutional application in the case of third parties, a law is substantially overbroad "only if it reaches substantially beyond the permissible scope of legislative regulation." *Taxpayers for Vincent*, 466 U.S. at 800 n.19 (quoting John Calvin Jeffries Jr., *Rethinking Prior Restraint*, 92 Yale L.J. 409, 425 (1983)).

L.C. has suggested various hypothetical scenarios under which the County noise ordinance might be unconstitionally applied to prohibit persons from playing sound at any level beyond that necessary for "convenient hearing." For example, L.C. argues, this language could prohibit sound that would not even be audible to persons outside the room where it is being played, much less sufficiently noisome to generate a complaint from neighboring inhabitants. The "convenient hearing" clause does not prohibit sound altogether. It provides a flexible standard for determining when noise levels within a chamber where a sound is being played

31

become excessive. The standard is tied to the comfort level of the voluntary listeners within that particular chamber— whether that chamber is a structure, an open-air atrium within a structure, a vehicle, etc.

Clearly, the standard needs to be flexible. The "convenient hearing" needs of persons who are dancing to club music in the open atrium of a 20,000 foot square, two-story building will differ from those of persons who are gathered in an apartment to watch an evening of the Boston Pops on television. Section 21-28(b) of the County Code provides a standard that is flexible in order to allow both groups of voluntary listeners to hear sound at a level that matches their particular needs.

We do not believe that there is a realistic threat of substantial overbreadth here either from the text of the law or from actual fact. L.C.'s overbreadth challenge fails on the merits. And, as we have noted, given that the ordinance does not impose prior restraints on speech, L.C.'s overbreadth challenge is simply without merit.

**D. Appellant's Alternative Facial Challenge: Vagueness**

L.C. also urges the court to invalidate section 21-28(b) of the County Code because it is unconstitutionally vague and thereby violates due process. A vaguely worded statute can trap innocent parties by failing to give notice of what is

prohibited, and allow enforcement officials to defer to their own standards of what constitutes a violation. *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

Ordinarily, a court must evaluate a vagueness challenge by the facts of the particular case before it. *Konikov v. Orange County,* 410 F.3d 1317, 1330 (11th Cir. 2005) (citing *United States v. Fisher*, 289 F.3d 1329, 1333 (2002)).When an ordinance restricts or penalizes speech, however, it can also exert a chilling effect that discourages individuals who are not present before the Court from exercising their First Amendment rights for fear of arbitrary enforcement. *Grayned,* 408 U.S. at 109. Accordingly, in such cases, courts may consider evidence of discriminatory or arbitrary enforcement that would be likely to chill expression by others. *Konikov*, 410 F.3d at 1330 (citing *Grayned*, 408 U.S. at 109 & n.5).

To prove that 21-28(b) of the County Code is vague, L.C. must either show that the ordinance fails to give fair warning of what constitutes a wrongdoing or that the statute lacks objective enforcement standards. *Id*. The traditional test for whether a statute or regulation is void on its face is if it is so vague that "persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). *See also Hynes v. Mayor and Council of Borough of Oradell*, 425 U.S. 610, 620 (1976). Courts apply this test even more strictly to statutes that inhibit free speech. *Id*.

## 1. Does the Ordinance Fail to Provide Notice of What Conduct is Prohibited?

Applying the *Connally* test to section 21-28(b) of the County Code, we find that it is not so vague that persons of ordinary intelligence would have to guess at its meaning. Indeed, the Supreme Court has upheld a number of the terms that appear here in other cases involving noise ordinances. In *Grayned*, 408 U.S. at 108, for example, a noise ordinance prohibited "any noise or diversion which disturbs or tends to disturb the peace or good order of [a] school session or class thereof." The Supreme Court upheld this language, cautioning that:

> Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the [] ordinance are marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' but we think it is clear what the ordinance as a whole prohibits.

*Id.* at 110 (internal citation omitted). Employing language that is clearly analogous to the language in *Grayned*, section 21-28(b) of the County Code states that it is unlawful to play a device that reproduces sound in such manner "as to disturb the peace, quiet and comfort of the neighboring inhabitants."

Alternatively, the County noise ordinance states that it is unlawful to play such a device "with louder volume than is necessary for convenient hearing" for those voluntary listeners in the "room, vehicle, or chamber" where the device is being operated. "Convenient hearing" is a term that is marked by "flexibility and

34

reasonable breadth," but as we have noted previously, we think the ordinance requires flexibility here.

Although the word "convenient" may be somewhat abstract, the Supreme Court upheld similarly abstract terms such as "loud" and "raucous" in a case that challenged controls on the volume of amplified sound. *See Kovacs v. Cooper*, 336 U.S. 77, 79 (1949). "While these are abstract words," the Court noted, "they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." *Id*. See also *Reeves v. McConn*, 631 F. 2d 377, 386 (5th Cir. 1980), where the Fifth Circuit approved the abstract terms "jarring" and "nuisance" on the same ground.

We believe that any interested person would know how to gauge what sound volume would be "louder than necessary for convenient hearing" when that standard is applied to persons who are present by design at the source of the sound. Convenient hearing means the "listening comfort" of those assembled.

### 2. Does the Ordinance Fail to Provide Clear Enforcement Standards?

Nevertheless, the overarching standard at play in this ordinance is the reasonable personable standard since the statute begins by prohibiting "unreasonably loud, excessive, unnecessary or unusual noises." The Supreme Court has approved the use of the word "unreasonably" in statutes that are otherwise

precise and narrowly drawn. *Reeve*, 631 F.2d. at 386 (citing *Cameron v. Johnson*, 390 U.S. 611, 615-16 (1968)).

Here, the County noise ordinance also provides an additional standard to guide those tasked with enforcing the ordinance. The additional standard is phrased as a rebuttable presumption. Operating a sound reproduction device between the hours of 11:00 p.m. and 7:00 a.m. in "such a manner as to be plainly audible at a distance of one hundred (100) feet from the building, structure or vehicle in which it is located" is considered prima facie evidence of a violation under section 21-28(b). This is an objective standard. Thus, we find that the language of the ordinance does not carry an inherent risk of arbitrary enforcement either, and we affirm the district court ruling that the County noise ordinance is not void for vagueness.

**E. Appellant's Damage Claim and Substantive Due Process Claim**

As we noted in the preface to this analysis, *supra* part II, subpart D, L.C.'s damage claim and substantive due process claim turn on the outcome of its facial challenge to the County noise ordinance. Since we have found that the ordinance is constitutional on its face, L.C. cannot request damages as a result of a constitutional violation. Similarly, L.C.'s substantive due process claim must fail to the extent that it was predicated on the enforcement of the allegedly

unconstitutional County noise ordinance. Thus, we also affirm the district court ruling that awarded summary judgment to the County on count III and the City on count V.

## V. CONCLUSION

The district court did not err in awarding the County summary judgment on counts II (facial challenge) and III (damages) of L.C.'s 42 U.S.C. § 1983 suit. L.C. challenged the constitutionality of the County noise ordinance on facial grounds, presenting three alternative grounds for invalidating the ordinance: 1) that it was not a content-neutral ordinance or if so, that it did not contain permissible time, place and manner restrictions on speech; 2) that it was overly broad and could inhibit others not before the Court from exercising their rights of expression; 3) that it was vague and violated due process under the Fourteenth Amendment. We find the statute to be constitutional on all three grounds. It is content-neutral and contains permissible time, place, and manner restrictions. Its standards are not worded in such vague terms that they fail to provide fair notice of what conduct is prohibited or allow room for arbitrary or discriminatory enforcement. We also find that the overbreadth exception does not apply to this ordinance since the ordinance does not impose a prior restraint on speech or impose criminal penalties.

Alternatively, we also find that L.C.'s overbreadth challenge fails on the merits. Thus, L.C. is not entitled to damages under count III.

Because we find the County ordinance is constitutional, we also find that L.C.'s substantive due process claim against the City for enforcement of the allegedly unconstitutional ordinance fails. Accordingly, the district court did not err in awarding the City summary judgment on count V of the Complaint.

**AFFIRMED**.