674 So.2d 863 (1996)
EASY WAY OF LEE COUNTY, INC., a Florida corporation d/b/a Club Nouveau After Dark; Luis C. Catania; and Mark A. Sanders, Appellants,
v.
LEE COUNTY, a political subdivision of the State of Florida; John McDougall, duly elected Sheriff of Lee County, Florida; and Joseph D'Alessandro, duly elected State Attorney for the Twentieth Judicial Circuit of the State of Florida, Appellees.
No. 95-02905.
District Court of Appeal of Florida, Second District.
May 24, 1996.
Steven Carta of Simpson, Henderson, Savage & Carta, Fort Myers, for Appellants.
James Yaeger, County Attorney, and Thomas E. Spencer, Assistant Lee County Attorney, Ft. Myers, for Appellees Lee County and Joseph D'Alessandro.
Kenneth W. Sukhia of Fowler, White, Gillen, Boggs, Villareal and Banker, P.A., Tallahassee, for Appellee John J. McDougall.
CAMPBELL, Acting Chief Judge.
Appellants, Easy Way of Lee County, Inc., doing business as Club Nouveau After Dark, Luis C. Catania and Mark A. Sanders, challenge a final summary judgment upholding the facial constitutionality of Lee County Noise Control Ordinance, chapter 241/4, Lee County Code, as amended by Lee County Ordinance 94-17. We find a portion of that ordinance to be unconstitutionally overbroad and vague as we will explain. The remainder of the ordinance is determined to be a severable and valid exercise of police power by Lee County. Accordingly, we reverse in part and affirm in part.
That portion of the Lee County Noise Control Ordinance which is the subject of this appeal is contained within the amendment enacted by Ordinance 94-17, and provides as follows:
SECTION TWO:
....
C. Specific Prohibitions
....
3. Radios, television sets, exterior loudspeakers and similar devices.
In the case of any radio receiving set, musical instrument, television, phonograph, drum, exterior loudspeaker, or other device for the production or reproduction of sound, it shall be unlawful to create or permit to be created any noise that exceeds:

*864 a. 60 dBA during the hours between 10 a.m. to 10 p.m. from the property line of the noise source.
b. 55 dBA during the hours between 10 p.m. to 12:00 a.m. from the property line of the noise source.
Operating or permitting the use or operation of any radio receiving set, musical instrument, television, phonograph, drum, exterior loudspeaker, or other device for the production or reproduction of sound in such a manner as to cause noise disturbance so as to disturb the peace, quiet and comfort of the neighborhood and vicinity thereof; operating any such device between the hours of 12:01 a.m. and the following 10:00 a.m. in such a manner as to be plainly audible across property boundaries or through partitions common to two (2) parties within a building or plainly audible at fifty (50) feet from such device when operated within a public space or within a motorboat.

4. For purposes of subsection 3 above, the term "plainly audible" shall mean any sound produced, including sound produced by a portable soundmaking device that can be clearly heard by a person using his or her normal hearing faculties, at a distance of fifty (50) feet or more from the source. Any law enforcement personnel or citizen who hears a sound that is plainly audible, as defined herein, shall be entitled to measure the sound according to the following standards:

a. The primary means of detection shall be by means of the complainant's ordinary auditory senses, so long as their hearing is not enhanced by any mechanical device, such as a microphone or hearing aid.

b. The complainant must have a direct line of sight and hearing to the source producing the sound so that he or she can readily identify the offending source and the distance involved.

c. The complainant need not determine the particular words or phrases being produced or the name of any song or artist producing the sound. The detection of a rhythmic bass reverberating type sound is sufficient to constitute a plainly audible sound.

(Emphasis supplied.)
We focus particularly on the emphasized portions of the amended ordinance (the last clause of section C(3) and all of section C(4)) and appellants' challenge against the facial validity of that portion as an overly broad restriction against the right of free speech provided for and protected by the First, Fifth and Fourteenth Amendments to the Constitution of the United States and sections 4 and 9 of article I of the Florida Constitution.
This appeal arises from the final summary judgment in a declaratory action filed by appellants seeking a determination as to whether the contested ordinance was facially invalid or invalid as applied to appellants. The facial validity of the ordinance is the sole issue presented on this appeal.
Appellant Club Nouveau is an after hours bottle club located in the Omni Center, a commercial shopping center adjacent to South U.S. 41 in Lee County. The center leases space to at least seventeen commercial businesses, twelve of which are open for business for all or a portion of the regulated time period of 12:01 a.m. to 10:00 a.m.
Appellants Catania and Sanders were managers of Club Nouveau. The club hires an independent DJ who plays pre-recorded music. No external loudspeakers are used. On July 27, 1994 and July 31, 1994, the Sheriff issued a citation to appellants Catania and Sanders for alleged violations of the above-quoted section of the ordinance. The citation charged that appellants had operated a device between 12:01 a.m. and 10:00 a.m., in such a manner as to be plainly audible at fifty feet from such device.
When the officer first arrived at the scene, he entered the club and requested appellant Catania to accompany him outside to a point fifty feet from the front door of the club. Catania complied and could not hear any sound, but was cited for music which could be heard fifty feet from the front door. At no time did the officer display a decibel meter or tell Catania that the music exceeded any specific decibel level. Similar procedures *865 and events took place at the time of the subsequent citations. Informations were later filed against appellants Sanders and Catania on the basis of those citations.
At the time the first citation was issued, the club was warned by the Sheriff that unless it turned down its music to comply with the fifty-foot restriction, further citations would be issued. The club complied, resulting in a loss of business. The club also soundproofed its interior walls and made periodic sound checks from a fifty-foot radius. Despite those attempts to comply with the ordinance, at least two more citations were issued to employees of the club after the trial court declaratory action proceedings were commenced. Those criminal proceedings remain pending.
The established business hours of Club Nouveau are from 1:30 a.m. to 6:30 a.m., Thursday through Monday. The club is located approximately fifty-eight feet from a residential community, commonly known as "The Forest." The amplified music played by the club immediately created problems for these residential neighbors. John Bullard attested that he resided 200-300 feet away from the club and that his residence was established approximately twelve years prior to the establishment of the club. Bullard stated he could hear the club's music during operating hours, and that he could regularly hear a bass boom beat which physically vibrates the pillow in his bedroom.
Other residents of The Forest had similar complaints. John Morse, the past president of the Forest Property Owner's Association, he attested that he received repeated complaints from property owners concerning noise from the club.
In addressing the constitutionality of the ordinance, we stress the fact that this appeal focuses only on the provisions of the ordinance emphasized above. We do not address whether the complaints of the adjacent residents can be or have been properly addressed under that portion of the ordinance we find to be valid and which prohibits "[o]perating or permitting the use of any radio receiving set, musical instrument, television, phonograph, drum, exterior loudspeaker, or other device for the production or reproduction of sound in such a manner as to cause noise disturbance so as to disturb the peace, quiet and comfort of the neighborhood and vicinity thereof; ...."
The United States Supreme Court has considered the permissible scope of government's efforts to protect citizens from disturbing or distracting sounds as those efforts relate to the "preferred position of freedom of speech." See Saia v. People of State of New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513, reh'g denied, 336 U.S. 921, 69 S.Ct. 638, 93 L.Ed. 1083 (1949).
In Ledford v. State, 652 So.2d 1254 (Fla. 2d DCA 1995), this court considered a "begging" ordinance of the City of St. Petersburg as it related to free speech rights. In holding the "begging" ordinance in Ledford unconstitutionally overbroad and vague, we applied a strict scrutiny standard as follows:
In the present case, since the ordinance restricts speech on the "public ways," a traditional public forum, the regulation is subject to intense scrutiny. Such regulations survive only if: (1) they are narrowly drawn to achieve a compelling governmental interest; (2) the regulations are reasonable; and (3) the viewpoint is neutral.
In subjecting the ordinance to strict scrutiny, we hold that section 20-79 of the City of St. Petersburg Code is unconstitutionally overbroad and infringes on Ledford's free speech rights in a manner more intrusive than is necessary. We embrace the holding in CCB that the aim of protecting citizens from annoyance is not a "compelling" reason to restrict speech in a traditionally public forum. See CCB, 458 So.2d at 50. Although section 20-79 does not ban begging in all public places, the ordinance is overbroad; it does not distinguish between "aggressive" and "passive" begging. Furthermore, section 20-79 is vague. To withstand a challenge for vagueness, an ordinance must provide adequate notice to persons of common understanding concerning the behavior prohibited and the specific intent required: it must provide "citizens, police officers and courts *866 alike with sufficient guidelines to prevent arbitrary enforcement." City of Seattle v. Webster, 115 Wash.2d 635, 645, 802 P.2d 1333, 1339 (Wash.1990), cert. denied, 500 U.S. 908, 111 S.Ct. 1690, 114 L.Ed.2d 85 (1991). The ordinance under review does not define the terms "beg" or "begging," nor is its intent expressed. Consequently, the danger of arbitrary enforcement exists.
652 So.2d 1254 at 1256.
Similarly, in the case before us, the Lee County ordinance does not define its crucial terms "plainly audible" so as to secure against arbitrary enforcement.
In Reeves v. McConn, 631 F.2d 377 (5th Cir.1980), reh'g denied, 638 F.2d 762 (5th Cir.1981), the court had occasion to construe a Houston sound abatement ordinance in light of Saia and Kovacs. The Reeves court struck down as unconstitutionally overbroad the following sections of the Houston ordinance:
(1) The operation of sound amplifying equipment is prohibited Monday through Saturday within the downtown business district. A permit must be obtained for the operation of such equipment in these areas on Sundays. Any such Sunday permit shall state the business district to which same applies and shall be valid for only one day. Each separate Sunday must have a separate permit. Provided, however, that the provisions of this section shall not apply to parade permits which have been obtained from city council.
(2) The operation of sound amplifying equipment is prohibited between the hours of 7:00 p.m. and 10:00 a.m. daily, and further prohibited on Sunday between 10:00 a.m. and 1:00 p.m.
....
(5) The operation of sound amplifying equipment is prohibited within one hundred (100) yards of any hospital, school, Church or courthouse.
631 F.2d at 380.
In doing so, the Reeves court explained its standard of review for overbreadth and vagueness as follows:
2. Overbreadth
If, at the expense of First Amendment freedoms, a statute reaches more broadly than is reasonably necessary to protect legitimate state interests, a court may forbid its enforcement. But the Supreme Court has cautioned that invalidation of state laws for facial overbreadth is a remedy that should be applied "sparingly and only as a last resort." Broadrick [v. Oklahoma], 413 U.S. [601] at 613, 93 S.Ct. [2908] at 2916 [37 L.Ed.2d 830 (1973)]. Accordingly, we will label a provision of the Houston ordinance unconstitutional only if a limiting construction could not readily be placed on the challenged section, Dombrowski v. Pfister, 380 U.S. 479, 491, 85 S.Ct. 1116, 1123, 14 L.Ed.2d 22 (1965), and if the overbreadth of the challenged provision is both real and substantial. Broadrick, 413 U.S. at 615, 93 S.Ct. at 2918.
3. Vagueness
Several provisions of subsection (b) were also challenged and invalidated for vagueness under the due process clause of the Fourteenth Amendment. The traditional standard of unconstitutional vagueness is whether the terms of a statute are so indefinite that "men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). See also Hynes v. Mayor and Council of Borough of Oradell, 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed.2d 243 (1976). This standard is applied even more strictly to statutes that inhibit free speech because of the value our society places on the free dissemination of ideas. Id. at 620, 96 S.Ct. at 1760.
631 F.2d at 383. However, the Reeves court also sustained the provision of the Houston ordinance that provided as follows: "The volume of sound amplified shall be controlled so that it is not unreasonably loud, raucous, jarring, disturbing or a nuisance to persons within the area of audibility."
In sustaining that portion of the Houston ordinance, the Reeves court stated:

*867 Subparagraph 6 requires the volume of sound amplification to be controlled so that it is not "unreasonably loud, raucous, jarring, disturbing, or a nuisance to persons within the area of audibility." The district court found that the terms "unreasonably" and "nuisance" are imprecise, do not give the ordinary person fair notice of prohibited conduct, and allow arbitrary and discriminatory enforcement by officials. The court therefore found this subparagraph to be void for vagueness under the Fourteenth Amendment. We disagree. The Supreme Court has approved the use of the word "unreasonably" in similar statutes that are otherwise precise and narrowly drawn. Cameron v. Johnson, 390 U.S. 611, 615-16, 88 S.Ct. 1335, 1338, 20 L.Ed.2d 182 (1968). The Court has also approved the terms "loud" and "raucous" as standards of prohibited sound amplification. Though these words are abstract, "they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden." Kovacs v. Cooper, 336 U.S. 77, 79, 69 S.Ct. 448, 450, 93 L.Ed. 513 (1949). [Footnote omitted.] We approve the words "jarring" and "nuisance" on the same grounds, even though they fall short of providing "mathematical certainty." Grayned [v. City of Rockford], 408 U.S. [104] at 110, 92 S.Ct. [2294] at 2299 [33 L.Ed.2d 222 (1972)]. "Flexibility and reasonable breadth, rather than meticulous specificity," is acceptable in this area. Id.

The remainder of the prohibitory language in subparagraph 6, "disturbing ... to persons within the area of audibility", presents a closer question. The Supreme Court has expressed reservations about the word "disturbs" in a similar ordinance. But in the expectation that a state court would interpret the term objectively to mean "actual or imminent interference with ... `peace or good order'", the Court eventually found the term not unconstitutionally vague or overbroad. Grayned, 408 U.S. at 109-112, 92 S.Ct. at 2299-2301. We have a similar expectation with regard to subparagraph 6. If actual experience with the ordinance were to demonstrate that it represents a subjective standard, prohibiting a volume that any individual person "within the area of audibility" happens to find personally "disturbing," we would not hesitate to change our judgment accordingly. Taking subparagraph 6 as a whole, we must at this time reverse the district court's finding that it is unconstitutionally vague.
631 F.2d at 385.
We hold that the "plainly audible" standard in the Lee County ordinance represents exactly such a "subjective standard, prohibiting a volume that any individual person `within the area of audibility' happens to find personally disturbing," that would have caused the Reeves court to strike down the remaining portion of the Houston ordinance. We likewise find it objectionable for being both overly broad and vague and, accordingly, declare that portion of the Lee County ordinance emphasized earlier as being unconstitutional.
Reversed and remanded for further proceedings consistent herewith.
PARKER and WHATLEY, JJ., concur.