BLACK, Judge.
Defendants, Richard T. Catalano and Alexander Schermerhorn, were issued traffic citations under section 316.3045, Florida Statutes (2007).[1] Section 316.3045 restricts the volume at which a car stereo system may be played on a public street, but it exempts vehicles being used for business or political purposes, which in the normal course of conducting such business use soundmaking devices. For the reasons stated below, we deny the State’s petition for certiorari.
I. Factual Background,
Mr. Catalano, a practicing attorney, and Mr. Schermerhorn were cited for playing their car radios too loudly, in violation of section 316.3045, which states as follows:
Operation of radios or other mechanical soundmaking devices or instruments in vehicles; exemptions—
(1) It is unlawful for any person operating or occupying a motor vehicle on a street or highway to operate or amplify the sound produced by a radio, tape player, or other mechanical soundmak-ing device or instrument from within the motor vehicle so that the sound is:
(a) Plainly audible at a distance of 25 feet or more from the motor vehicle; or
(b) Louder than necessary for the convenient hearing by persons inside the vehicle in areas adjoining churches, schools, or hospitals.
(2) The provisions of this section shall not apply to any law enforcement motor vehicle equipped with any communication device necessary in the performance of law enforcement duties or to any emergency vehicle equipped with any communication device necessary in the performance of any emergency procedures.
(3) The provisions of this section do not apply to motor vehicles used for business or political purposes, which in the normal course of conducting such business use soundmaking devices. The *1142 provisions of this subsection shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from regulating the time and manner in which such business may be operated.
(4) The provisions of this section do not apply to the noise made by a horn or other warning device required or permitted by s. 316.271. The Department of Highway Safety and Motor Vehicles shall promulgate rules defining “plainly audible” and establish standards regarding how sound should be measured by law enforcement personnel who enforce the provisions of this section.
(5) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.
In county court, Mr. Catalano and Mr. Schermerhorn both pleaded not guilty and moved to dismiss their citations on the grounds that section 316.3045(1) is unconstitutionally vague and overbroad, invites arbitrary enforcement, and impinges free speech rights. The trial judge denied the motions, whereupon Mr. Catalano and Mr. Schermerhorn changed their pleas to nolo contendere and reserved the right to appeal the denial of their motions to dismiss. The trial judge accepted the pleas, withheld adjudication, and imposed court costs. Mr. Catalano and Mr. Schermerhorn appealed the decision to the circuit court.
On appeal, the circuit court focused its analysis on two Florida decisions that discuss the meaning of the term, “plainly audible” in the context of whether that phrase is vague and invites arbitrary enforcement. In Easy Way of Lee County, Inc. v. Lee County, 674 So.2d 863, 867 (Fla. 2d DCA 1996), the court held that the “plainly audible” standard in a county noise ordinance was unconstitutionally vague, overbroad, and invited arbitrary enforcement. Although Easy Way involved a county noise ordinance and not a traffic control statute, Mr. Catalano argued that section 316.3045(1)(a) must also fail, inasmuch as the statute utilized the “plainly audible” standard.
The State argued that Easy Way was not controlling, but rather the Fifth District’s decision in Davis v. State, 710 So.2d 635 (Fla. 5th DCA 1998), compelled the conclusion that section 316.3045(1) is constitutional. In Davis, a previous version of section 316.3045 was deemed to be constitutional against a vagueness and over-breadth challenge. Id. at 635.[2]
The circuit court carefully considered each argument and concluded that the issue ruled on by the two district courts was essentially the same, i.e., whether the “plainly audible” standard was too vague and overbroad to pass constitutional scrutiny. The court concluded that the decision in Davis conflicts with the decision in Easy Way. The court reasoned that the different purpose of the ordinance and the statute — one addressing general county noise ordinance standards and the other addressing the safe operation of motor vehicles on highways — did not change the fact that the test to determine the facial *1143 constitutionality of nearly identical language was the same. Since the Second District had decided the issue, the court held the statute must fail because the court was “obliged to follow the ruling of the Second District.” See Pardo v. State, 596 So.2d 665, 667 (Fla.1992) (“[I]f the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it”) (quoting State v. Hayes, 338 So.2d 51, 53 (Fla. 4th DCA 1976)).
The State of Florida filed this timely petition for certiorari review arguing that the circuit court departed from the essential requirements of the law because section 316.3045 does not invite arbitrary enforcement, it comports with free speech rights, and binding precedent found this section constitutional.
II. Standard of Review
In a petition for certiorari that seeks review of an appellate decision from the circuit court, the standard of review is narrow. Bennett v. State, 23 So.3d 782, 787-88 (Fla. 2d DCA 2009). The district court is typically limited to reviewing “instances where the lower court did not afford procedural due process or departed from the essential requirements of law.” Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003). In order for a writ of certiorari to issue, a departure from the essential requirements of the law must be more than a simple legal error. Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla.2000) (citing Stilson v. Allstate Ins. Co., 692 So.2d 979, 982 (Fla. 2d DCA 1997)). “A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.” Kaklamanos, 843 So.2d at 889 (citing Ivey, 774 So.2d at 682). A “ ‘clearly established principle of law’ can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law.” Kaklamanos, 843 So.2d at 890. “[I]n addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.” Id.
III. Easy Way/Davis Analysis
The State argues that the circuit court departed from the essential requirements of the law by applying Easy Way instead of Davis. The State asserts that Easy Way was decided based on a county’s subjective enforcement of a general noise ordinance and the challenge in this case is based on a facial challenge of a statute that addresses safety on the highways. The State reasons that Davis is binding precedent because it addresses the specific statute that is under attack in this case. Specifically, the State asserts that the circuit court’s holding was due to the subjective application and arbitrary enforcement of the “plainly audible” standard in the ordinance. The State points to the language in Easy Way that states: “If actual experience with the ordinance were to demonstrate that it represents a subjective standard, prohibiting a volume that any individual person ‘within the area of audibility’ happens to find personally ‘disturbing,’ we would not hesitate to change our judgment accordingly.” Easy Way, 674 So.2d at 867 (quoting Reeves v. McConn, 631 F.2d 377, 385 (5th Cir.1980)).
We do not agree with the State’s position. The challenge in Easy Way was a facial challenge. 674 So.2d at 863. Although the court did quote the Reeves language cited above, it also stated that “the ordinance does not define its crucial terms ‘plainly audible’ so as to secure against arbitrary enforcement.” Id. at 866. The court reasoned that the “plainly audible” standard represented the subjective standard that was discussed in the *1144 Reeves decision — “any individual person ‘within the area'of audibility’'happens to find personally ‘disturbing,’ ” — not because the term “plainly audible” was being applied subjectively, but because the term “plainly audible” was a subjective term on its face; thus, the court found it vague. Id. at 867.
Because this case presents a facial challenge to the term “plainly audible” and because both Easy Way and Davis dealt with the issue of whether the term “plainly audible” is constitutional, we hold that the circuit court did not depart from the essential requirements of the law in applying the binding precedent from the Easy Way decision. We agree with the circuit court that whether the “plainly audible” standard is applied in a noise ordinance or in a traffic statute, the test for constitutionality is the same. Because we find the circuit court afforded procedural due process and did not violate clearly established principles of law, we deny the State’s petition. In doing so, we certify a question of great public importance:
IS THE “PLAINLY AUDIBLE” LANGUAGE IN SECTION 316.3045(l)(a), FLORIDA STATUTES, UNCONSTITUTIONALLY VAGUE, OVER-BROAD, ARBITRARILY ENFORCEABLE, OR IMPINGING ON FREE SPEECH RIGHTS?
IV. ' Content-Based Analysis
Additionally, while recognizing our agreement with the reasoning and conclusion reached by the circuit court, we note that section 316.3045 suffers from a more fundamental infirmity. In this case, Mr. Catalano argued that this statute should be found unconstitutional because it is not “content-neutral,” and there is no compelling governmental interest requiring disparate treatment of commercial or political speech versus amplified music. The State argues that either the statute in question is content-neutral, or that the distinctions drawn in the statute are permissible because of their lower threat to public safety and intrusiveness. At oral argument, the State attempted to distinguish the commercial and political speech exception in the statute by stating that the exception applied to vehicles and not the content of the speech. However, we find this a distinction without a difference. It is not the vehicle that the statute is seeking to restrict; it is the sound emanating from the vehicle. Thus, commercial and political speech may emanate from the vehicle at a louder volume than other types of speech, making the statute a-content-based restriction on free speech. The State has advanced no compelling state interest that can rescue the statute from being an unconstitutional suppression of protected speech.
A. Preliminary Discussion
As a starting point, it is necessary to first determine whether the First Amendment protects the conduct at issue in the challenged statute, playing music on a street or highway. The Supreme Court has clearly stated that the First Amendment applies to this form of speech. Ward v. Rock Against Racism, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Although the First Amendment protects the right to broadcast recorded music, the government may, nevertheless, impose reasonable restrictions on the time, place and manner in which persons exercise this right, subject to certain provisos. Daley v. City of Sarasota, 752 So.2d 124, 126 (Fla. 2d DCA 2000). “Those provisos are that: 1) the restrictions are content-neutral; 2) they are narrowly tailored to serve a significant governmental interest, and 3) they leave open ample alternative channels of communication.” DA Mortg., Inc. v. City of Miami Beach, 486 F.3d 1254, 1266 (11th Cir.2007) (citing Ward, 491 U.S. at 791, 109 S.Ct. 2746). However, “ordinances *1145 that regulate speech based upon the content of the message are presumptively unconstitutional and are subject to a higher level of scrutiny as a result.” Id. at n. 8. (citing Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1258-59 (11th Cir.2005)).
B. The Statute is Not Content-Neutral
Analysis of the regulation of speech begins with whether the regulation is content-based or content-neutral. See KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268-69 (11th Cir.2006). An intermediate level of judicial scrutiny is used where the regulation is unrelated to content. Turner Broad. Sys., Inc. v. Fed. Commc’ns Comm’n, 512 U.S. 622, 642-43, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). On the other hand, where a regulation suppresses, disadvantages or imposes differential burdens upon speech because of its content, “the most exacting scrutiny” must be applied. Id. Such content-based discrimination is “presumptively impermissible” and will be upheld only if it is narrowly tailored to serve a compelling state interest with the least possible burden on expression. City of Ladue v. Gilleo, 512 U.S. 43, 59, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994); Widmar v. Vincent, 454 U.S. 263, 270, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). “At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence.” Turner Broad. Sys., 512 U.S. at 641, 114 S.Ct. 2445.
In DA Mortgage, the court upheld a county noise ordinance because it was content-neutral, was narrowly tailored to achieve a significant government interest, and left open ample alternative channels of communication. 486 F.3d at 1266-69. In upholding the statute against a challenge of being content-based, the court stated:
Accordingly, when we apply this standard to the ordinance at issue, we find, as the district court did, that the ordinance is content-neutral. On its face, it does not disallow certain types of recorded noise or particular •viewpoints. It does not distinguish, for example, between excessively loud singing, thunderous classical music recordings, reverberating bass beats, or television broadcasts of raucous World Cup soccer finals. It simply prohibits excessively loud noise from recorded sources, whether radio, television, phonographs, etc.
Id. at 1266. Unlike the statute in DA Mortgage, the statute in our case does distinguish between different types of recorded noise or particular viewpoints.
A case that is directly on point, and was cited favorably in Cannon, is People v. Jones, 188 Ill.2d 352, 242 Ill.Dec. 267, 721 N.E.2d 546 (1999). In that case, the court held that a sound amplification statute, which prohibited the use of sound amplification systems in motor vehicles that could be heard from a specified distance away from a vehicle and which contained an exception for vehicles engaged in advertising, was a content-based regulation of speech, in violation of the First Amendment. Id. at 551-51. In Jones, the Illinois Supreme Court, citing Carey v. Brown, 447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), noted that “generally, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based.” Id. at 550. The court struck the statute, finding, “the statute favors advertising messages over other messages by allowing only the former to be broadcast at a particular volume.” Id. at 552. In so ruling, the court rejected the State’s argument that the statute was content-neutral because it was not enacted with the purpose of discriminating against any particular expression. Id. The fundamental problem with the analysis, according to the court, was that “on its face” *1146 the statute discriminated based on content. Id. This is the same fundamental problem with the statute in our case.
Finally, the United States Supreme Court discussed the content-neutrality requirement for permissible “time, place or manner” regulations in City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). In that case, the city refused to allow distribution of commercial publications through freestanding newsracks on public property but allowed the distribution of newspapers in that manner. Id. at 412-14, 113 S.Ct. 1505. The city argued that its regulation was designed to limit the total number of newsracks, for reasons of safety and aesthetics. Id. at 428-29, 113 S.Ct. 1505. Therefore, according to the city, the regulation was a permissible time, place and manner restriction. Id. The Court rejected this argument. Id. In so ruling, the Court gave the following illustration which is instructive in our case: “[A] prohibition against the use of sound trucks emitting ‘loud and raucous’ noise in residential neighborhoods is permissible if it applies equally to music, political speech, and advertising.” Id. at 428-29, 113 S.Ct. 1505 (emphasis added) (citing Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949)).
Turning our attention to the Florida statute at issue, on its face it is not content neutral. The statute excepts from its provisions “motor vehicles used for business or political purposes, which in the normal course of conducting such business use soundmaking devices.” § 316.3045(3). In other words, an individual using a vehicle for business purposes could, for example, listen to political talk radio at a volume clearly audible from a quarter mile; however, an individual sitting in a personal vehicle that is parked next to the business vehicle is subject to a citation if the individual is listening to music or religious programming that is clearly audible at twenty-five feet. Clearly, different forms of speech receive different treatment under the Florida statute. That is, the statute in question does not “apply equally to music, political speech and advertising,” which is what the Supreme Court requires in order for the statute to be deemed, “content-neutral.” See City of Cincinnati, 507 U.S. at 428, 113 S.Ct. 1505.
Given that the statute is a content-based restriction on protected expression, it is presumptively invalid and may be upheld only if it is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. Jones, 242 Ill.Dec. 267, 721 N.E.2d at 550. We fail to see how the interests asserted by the State are better served by the statute’s exemption for commercial and political speech. As in Jones, the State provides no explanation as to why a noncommercial message broadcast at a particular volume poses a danger to the public, while a commercial or political message does not. Further, as with the statute in Jones, the Florida statute is peculiar in protecting commercial speech to a greater degree than noncommercial speech. Commercial speech is typically in a “subordinate position” in the scale of First Amendment values. U.S. v. Edge Broad. Co., 509 U.S. 418, 430, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993).
V. Conclusion
We deny the petition for certiorari because the circuit court afforded the parties due process and it did not depart from the essential requirements of the law in finding the statute unconstitutional. Additionally, we conclude that the statute is a content-based restriction on free expression which violates the First Amendment. We also certify a question of great public importance, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v).
Petition denied; question certified.
*1147 KELLY, J., Concurs specially with opinion.
RAIDEN, MICHAEL E., Associate Judge, Concurs with opinion.

. These cases were consolidated for purposes of this opinion because the circuit court issued the same opinion in both cases, and the briefs, the arguments, and the attorneys were identical on appeal. The only difference in these cases was that Mr. Catalano was issued a traffic citation under section 316.3045 on November 13, 2007, and Mr. Schermerhorn's citation was issued on April 11, 2008.

. We note that in 2005, after the Davis decision was rendered, the Florida Legislature amended section 316.3045 to change the distance of the plainly audible standard from 100 feet to 25 feet. See ch. 05-164, § 9, Laws of Fla. At least one federal court case finds that Davis is nonbinding due to this amendment. See Cannon v. City of Sarasota, No. 8:09-CV-739-T-33TBM, 2010 WL 962934, at *3 (M.D.Fla. March 16, 2010) (distinguishing Davis as dealing with the constitutionality of the prior version of the statute and finding two counts in a civil complaint that challenged the constitutionality of section 316.3045, under a First Amendment content-based challenge, were sufficient to withstand a 12(b)(6) motion to dismiss).