ORFINGER, C.J.
“Music, as a form of expression and communication, is protected under the First Amendment.” Ward v. Rock Against Racism, 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). This protection extends to amplified music. See Saia v. New York, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948) (holding use of sound amplification equipment within reasonable limits is aspect of free speech protected by First Amendment). Shannon Montgomery exercised his right to play loud music from his car with great enthusiasm — enough in fact to draw the attention of the police who pulled him over for a noise violation. When it was discovered that his driver’s license was suspended, he was arrested and his car was searched. The police found drugs and drug paraphernalia in the car.
After being charged with trafficking in cocaine 28 grams or more, driving while license revoked as a habitual offender, possession of cannabis 20 grams or less, and possession of drug paraphernalia, Montgomery filed a motion to suppress, contending that the evidence was illegally obtained. Specifically, Montgomery asserted that Florida’s noise statute, section 316.3045(l)(a), Florida Statutes (2005), was unconstitutionally vague and overbroad and restricted his right of free expression. Section 316.3045, Florida Statutes (2005), provides, in pertinent part:
Operation of radios or other mechanical soundmaking devices or instruments in vehicles; exemptions.—
*1026 (1) It is unlawful for any person operating or occupying a motor vehicle on a street or highway to operate or amplify the sound produced by a radio, tape player, or other mechanical soundmak-ing device or instrument from within the motor vehicle so that the sound is:
(a) Plainly audible at a distance of 25 feet or more from the motor vehicle;
[[Image here]]
(3) The provisions of this section do not apply to motor vehicles used for business or political purposes, which in the normal course of conducting such business use soundmaking devices. The provisions of this subsection shall not be deemed to prevent local authorities, with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power, from regulating the time and manner in which such business may be operated.
Following a hearing, the trial court denied Montgomery’s motion. Montgomery then entered a plea of nolo contendere, reserving his right to appeal the court’s denial of the dispositive motion to suppress.

Standard of Review

A trial court’s decision regarding the constitutionality of a statute is reviewed de novo as it presents a pure question of law. Caribbean Conservation Corp. v. Fla. Fish & Wildlife Conservation Comm’n, 838 So.2d 492, 500 (Fla.2003); State v. Hanna, 901 So.2d 201, 204 (Fla. 5th DCA 2005) (“The interpretation of a statute or an ordinance is a purely legal matter and is subject to de novo review.”). There is a strong presumption that a statute is constitutionally valid, and all reasonable doubts about the statute’s validity must be resolved in favor of constitutionality. See DuFresne v. State, 826 So.2d 272, 274 (Fla.2002); Adhin v. First Horizon Home Loans, 44 So.3d 1245, 1250 (Fla. 5th DCA 2010). As a result, the party challenging the constitutionality of a statute bears a heavy burden of establishing its invalidity. See Wright v. State, 739 So.2d 1230, 1231 (Fla. 1st DCA 1999).

Vagueness

Montgomery argues that the statute’s “plainly audible” standard is imper-missibly vague and fails to provide fair notice to an ordinary person of what conduct is prohibited. Montgomery finds support for his vagueness challenge in Easy Way of Lee County, Inc. v. Lee County, 674 So.2d 863, 867 (Fla. 2d DCA 1996). In Easy Way, the “plainly audible” standard in a county noise ordinance was found to be unconstitutionally vague and overbroad. More recently, in State v. Catalano, 60 So.3d 1139, 1143-14 (Fla. 2d DCA 2011), the Second District Court of Appeal again addressed the “plainly audible” standard in a challenge to section 316.3045, writing:
The challenge in Easy Way was a facial challenge. 674 So.2d at 863. Although the court did quote the Reevesfv. McConn, 631 F.2d 377, 385 (5th Cir. 1980),] language cited above, it also stated that “the ordinance does not define its crucial terms ‘plainly audible’ so as to secure against arbitrary enforcement.” Id. at 866. The court reasoned that the “plainly audible” standard represented the subjective standard that was discussed in the Reeves decision— “any individual person ‘within the area of audibility’ happens to find personally ‘disturbing,’ ” —not because the term “plainly audible” was being applied subjectively, but because the term “plainly audible” was a subjective term on its face; thus, the court found it vague. Id. at 867.
But, Montgomery correctly observes that this Court rejected a vagueness challenge to an earlier version of section 316.3045 in Davis v. State, 710 So.2d 635 (Fla. 5th DCA 1998), explaining:
*1027 This noise code is not vague. One may not play his or her car radio so loudly that it is plainly audible to another standing 100 feet or further away. Noise ordinances based on distances beyond which the sound may not be audible have been upheld. See State v. Ewing, 81 Hawai'i 156, 914 P.2d 549 (1996); City of Portland v. Ayers, 93 Or.App. 731, 764 P.2d 556 (1988), rev. denied, 308 Or. 79, 775 P.2d 322 (1989).
Id. at 636.[1]
When considering the constitutionality of a statute, we first look at the language of the statute itself. See State v. Dugan, 685 So.2d 1210, 1212 (Fla.1996); Miele v. Prudential-Bache Sec., Inc., 656 So.2d 470, 472 (Fla.1995). Section 316.3045(l)(a) provides, in pertinent part, that “[i]t is unlawful for any person operating or occupying a motor vehicle on a street or highway to operate or amplify the sound produced by a radio, tape player, or other mechanical soundmaking device or instrument from within the motor vehicle so that the sound is ... [pjlainly audible at a distance of 25 feet or more from the motor vehicle.... ”
Although the phrase “plainly audible” is not defined by statute, pursuant to section 316.3045(4), the Department of Highway Safety and Motor Vehicles has promulgated rules defining “plainly audible” and established standards for how sound is measured by law enforcement personnel enforcing the statute. See Fla. Admin. Code R. 15B-13.001 (adopted Nov. 21, 2006). Specifically, rule 15B-13.001 states:
15B-13.001. Operation of Soundmak-ing Devices in Motor Vehicles.
(1)The purpose of this rule is to set forth the definition of the term “plainly audible” and establish standards regarding how sound should be measured by law enforcement personnel who enforce Section 316.3045, F.S.
(2) “Plainly Audible” shall mean any sound produced by a radio, tape player, or other mechanical or electronic sound-making device, or instrument, from within the interior or exterior of a motor vehicle, including sound produced by a portable soundmaking device, that can be clearly heard outside the vehicle by a person using his normal hearing faculties, at a distance of twenty-five feet (25 § ) or more from- the motor vehicle.
(3) Any law enforcement personnel who hears a sound that is plainly audible, as defined herein, shall be entitled to measure the sound according to the following standards:
(a) The primary means of detection shall be by means of the officer’s ordinary auditory senses, so long as the officer’s hearing is not enhanced by any mechanical device, such as a microphone or hearing aid.
(b) The officer must have a direct line of sight and hearing, to the motor vehicle producing the sound so that he can readily identify the offending motor vehicle and the distance involved.
(c) The officer need not determine the particular words or. phrases being produced or the name of any song or artist producing the sound. The detection of a rhythmic bass reverberating type sound is sufficient to constitute a plainly audible sound.
(d) The motor vehicle from which the sound is produced must be located upon (stopped, standing or moving) any street or highway as defined by Section 316.002(53), F.S. Parking lots and driveways are included when any part thereof *1028 is open to the public for purposes of vehicular traffic.
(4) The standards set forth in subsection (3) above shall also apply to the detection of sound that is louder than necessary for the convenient hearing of persons inside the motor vehicle in areas adjoining churches, schools, or hospitals.
See also Webster’s Tenth New Collegiate Dictionary 75, 886 (10th ed. 2000) (defining “plain” as “clear” and “audible” as “heard or capable of being heard”).
A vague statute is one that fails to give a person of common intelligence fair and adequate notice of what conduct is prohibited and which, because of its imprecision, may also invite arbitrary and discriminatory enforcement. Brown v. State, 629 So.2d 841, 842 (Fla.1994); Se. Fisheries Ass’n v. Dep’t of Natural Res., 453 So.2d 1351, 1353 (Fla.1984). A statute is not unconstitutionally vague if the language “conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.” Brown, 629 So.2d at 842 (citations omitted). We believe the statute here provides fair notice of the prohibited conduct: it is a violation to operate or amplify the sound inside a vehicle in the state of Florida, so that it is capable of being clearly heard outside of the vehicle at a distance greater than 25 feet. The distance standard provides an explicit guideline to those charged with enforcing the statute. If a law enforcement officer can hear sounds at or beyond the specified distance using his normal sense of hearing, the statute has been violated. See Davis, 710 So.2d at 636.[2] And, we believe that the “plainly audible” standard is no less precise than the “loud and raucous” standard approved by the United States Supreme Court in City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 428-29, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), which stated that “a prohibition against the use of sound trucks emitting ‘loud and raucous’ noise in residential neighborhoods is permissible if it applies equally to music, political speech, and advertising.”

Overbreadth

“[T]he doctrines of overbreadth and vagueness are separate and distinct.” Se. Fisheries Ass’n, 453 So.2d at 1353. The overbreadth doctrine applies when legislation criminalizes constitutionally protected activities along with unprotected activities, by sweeping too broadly and infringing upon fundamental rights. See Firestone v. News-Press Publ’g Co., 538 *1029 So.2d 457, 459 (Fla.1989). In the context of the First Amendment, an overbroad statute is one that restricts protected speech or conduct along with unprotected speech or conduct. State v. Montas, 993 So.2d 1127, 1129 (Fla. 5th DCA 2008); Shapiro v. State, 696 So.2d 1321, 1324 (Fla. 4th DCA 1997); see State v. Bryant, 953 So.2d 585, 587 (Fla. 1st DCA 2007) (“Legislation is overbroad when it is drafted in a manner that may be applied to conduct protected by the First Amendment.”). “The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process.” Ashcroft v. Free Speech Coalition, 535 U.S. 234, 255, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); see City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla.1985); Montas, 993 So.2d at 1129. As the United States Supreme Court explained, “[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.” NAACP v. Button, 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).
Due to the importance of the interests that the doctrine of overbreadth protects, litigants need not meet the traditional requirement of standing. Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Even “an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face” on the ground that the rights of others not before the court may be unconstitutionally inhibited. Bd. of Airport Comm’rs v. Jews for Jesus, Inc., 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). This is premised on the judicial assumption that the statute’s very existence may cause others not before the court to refrain from constitutionally-protected speech or expression rather than undertake to have the law declared partially invalid. Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985); Broadrick, 413 U.S. at 612, 93 S.Ct. 2908; Sult v. State, 906 So.2d 1013, 1019 (Fla.2005); Wyche v. State, 619 So.2d 231, 235 (Fla.1993).
Restrictions on First Amendment rights must be supported by a compelling governmental interest, and must be narrowly drawn to insure that there is no more infringement than is necessary. Firestone, 538 So.2d at 459. At the same time, we recognize that the overbreadth doctrine is an unusual remedy that must be used sparingly, particularly where the challenged statute is primarily meant to regulate conduct and not merely speech. Broadrick, 413 U.S. at 615, 93 S.Ct. 2908; Schmitt v. State, 590 So.2d 404, 411-12 (Fla.1991); Montas, 993 So.2d at 1130. Accordingly, in considering an overbreadth challenge, a court must determine whether the statute inhibits First Amendment rights, and, if so, whether the impact on such rights is substantial. Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). If the statute does not “reach[ ] a substantial amount of constitutionally protected conduct,” then the overbreadth claim fails. Id.
In Davis, this Court wrote:
Davis’ free speech argument is also unavailing. The ordinance addresses noise not speech. In Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 3068-69, 82 L.Ed.2d 221 (1984), the United States Supreme Court held that it is appropriate to impose reasonable restrictions on the time, place, and manner of protected speech. In order for the regulation to be valid, it must: (1) be content neutral; (2) narrowly tailored; and (3) leave open alternative channels. The ordinance herein does not address content at all; it narrows its application to sounds that are *1030 plainly audible 100 feet or further away; and it permits one to listen to anything he or she wishes so long as it cannot be heard at the prohibited distance. In other words, the statute permits one to listen to anything he or she pleases, although not as loudly as one pleases....
710 So.2d at 636. The State thus argues that since the statute does not impinge upon Montgomery’s right to free speech, it is not subject to an overbreadth analysis. We disagree and believe that Davis is distinguishable, in part because it dealt with a prior version of the statute. More importantly, Davis did not involve a content-based claim as Montgomery makes here. See Cannon v. City of Sarasota, No. 8:09-CV-739-T-33TBM, 2010 WL 962934, at *3 (M.D.Fla. Mar. 16, 2010) (questioning continued viability of Davis in light of change to statute and lack of content-based claim).
As previously discussed, music, including amplified music, is protected under the First Amendment. See Ward, 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661; Saia, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574. Nonetheless, the government can constitutionally restrict such expression, even in a public place, if the limitations on the time, place, and manner of the protected speeeh are reasonable. The restrictions must be “justified without reference to the content of the regulated speech, ... narrowly tailored to serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information.” Ward, 491 U.S. at 791, 109 S.Ct. 2746 (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)).
Section 316.3045(1)(a) is not content neutral, and therefore, a strict scrutiny standard of judicial review applies. See, e.g., Simmons v. State, 944 So.2d 317, 323 (Fla.2006). The statute excepts from its reach all amplified business or political speech. However, business or commercial speech has consistently been given less protection than noncommercial speech. See generally Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 513, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (“[0]ur recent commercial speech cases have consistently accorded noncommercial speech a greater degree of protection than commercial speech.”); Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm’n of N.Y., 447 U.S. 557, 562-63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (“The Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression.”). By giving more protection to commercial than to noncommercial speech, this statute inverts a well-established constitutional principle. See Metromedia, 453 U.S. at 512-13, 101 S.Ct. 2882 (plurality opinion, finding that city could not conclude communication of commercial information concerning goods and' services connected with particular site is of greater value than communication of noncommercial messages). In this case, music or a religious message amplified so as to be heard twenty-five feet away from a vehicle would violate the statute, while a sound truck blaring “Eat at Joe’s” or “Vote for Smith” plainly audible at a great distance, would be authorized. Clearly, the statute discriminates on the basis of content, not noise.
The Second District reached the same conclusion in Catalano, and found that section 316.3045 was unconstitutionally over-broad as a content-based restriction on free expression. The court determined that the statute violates the First Amendment since the volume of commercial and political messages poses the same concern to the public as any other noise. The court explained:
*1031 Analysis of the regulation of speech begins with whether the regulation is content-based or content-neutral. See KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268-69 (11th Cir.2006). An intermediate level of judicial scrutiny is used where the regulation is unrelated to content. Turner Broad. Sys., Inc. v. Fed. Commc’ns Comm’n, 512 U.S. 622, 642-43, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994). On the other hand, where a regulation suppresses, disadvantages or imposes differential burdens upon speech because of its content, “the most exacting scrutiny” must be applied. Id. Such content-based discrimination is “presumptively impermissible” and will be upheld only if it is narrowly tailored to serve a compelling state interest with the least possible burden on expression. City of Ladue v. Gilleo, 512 U.S. 43, 59, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994); Widmar v. Vincent, 454 U.S. 263, 270, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981). “At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence.” Turner Broad. Sys., 512 U.S. at 641, 114 S.Ct. 2445.
In DA Mortgage[ Inc. v. City of Miami, 486 F.3d 1254 (11th Cir.2007) ], the court upheld a county noise ordinance because it was content-neutral, was narrowly tailored to achieve a significant government interest, and left open ample alternative channels of communication. 486 F.3d at 1266-69. In upholding the statute against a challenge of being content-based, the court stated:
Accordingly, when we apply this standard to the ordinance at issue, we find, as the district court did, that the ordinance is content-neutral. On its face, it does not disallow certain types of recorded noise or particular viewpoints. It does not distinguish, for example, between excessively loud singing, thunderous classical music recordings, reverberating bass beats, or television broadcasts of raucous World Cup soccer finals. It simply prohibits excessively loud noise from recorded sources, whether radio, television, phonographs, etc.
Id. at 1266. Unlike the statute in DA Mortgage, the statute in our case does distinguish between different types of recorded noise or particular viewpoints.
A case that is directly on point, and was cited favorably in Cannon, is People v. Jones, 188 Ill.2d 352, 242 Ill.Dec. 267, 721 N.E.2d 546 (1999). In that case, the court held that a sound amplification statute, which prohibited the use of sound amplification systems in motor vehicles that could be heard from a specified distance away from a vehicle and which contained an exception for vehicles engaged in advertising, was a content-based regulation of speech, in violation of the First Amendment. Id. at 551 — 51[sic]. In Jones, the Illinois Supreme Court, citing Carey v. Brown, 447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980), noted that “generally, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based.” Id. at 550, 100 S.Ct. 2286. The court struck the statute, finding, “the statute favors advertising messages over other messages by allowing only the former to be broadcast at a particular volume.” Id. at 552, 100 S.Ct. 2286. In so ruling, the court rejected the State’s argument that the statute was content-neutral because it was not enacted with the purpose of discriminating against any particular expression. Id. The fundamental problem with the analysis, according to the court, was that “on its face” the statute discriminated based on content. Id. This is the same *1032 fundamental problem with the statute in our case.
Finally, the United States Supreme Court discussed the content-neutrality requirement for permissible “time, place or manner” regulations in City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 113 S.Ct. 1505, 128 L.Ed.2d 99 (1993). In that case, the city refused to allow distribution of commercial publications through freestanding newsracks on public property but allowed the distribution of newspapers in that manner. Id. at 412-14, 113 S.Ct. 1505. The city argued that its regulation was designed to limit the total number of newsracks, for reasons of safety and aesthetics. Id. at 428-29, 113 S.Ct. 1505. Therefore, according to the city, the regulation was a permissible time, place and manner restriction. Id. The Court rejected this argument. Id. In so ruling, the Court gave the following illustration which is instructive in our case: “[A] prohibition against the use of sound trucks emitting ‘loud and raucous’ noise in residential neighborhoods is permissible if it applies equally to music, political speech, and advertising.” Id. at 428-29, 113 S.Ct. 1505 (emphasis added) (citing Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949)).
Turning our attention to the Florida statute at issue, on its face it is not content neutral. The statute excepts from its provisions “motor vehicles used for business or political purposes, which in the normal course of conducting such business use soundmaking devices.” § 316.3045(3). In other words, an individual using a vehicle for business purposes could, for example, listen to political talk radio at a volume clearly audible from a quarter mile; however, an individual sitting in a personal vehicle that is parked next to the business vehicle is subject to a citation if the individual is listening to music or religious programming that is clearly audible at twenty-five feet. Clearly, different forms of speech receive different treatment under the Florida statute. That is, the statute in question does not “apply equally to music, political speech and advertising,” which is what the Supreme Court requires in order for the statute to be deemed, “content-neutral.” See City of Cincinnati, 507 U.S. at 428, 113 S.Ct. 1505.
Given that the statute is a content-based restriction on protected expression, it is presumptively invalid and may be upheld only if it is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. Jones, 242 Ill.Dec. 267, 721 N.E.2d at 550. We fail to see how the interests asserted by the State are better served by the statute’s exemption for commercial and political speech. As in Jones, the State provides no explanation as to why a noncommercial message broadcast at a particular volume poses a danger to the public, while a commercial or political message does not. Further, as with the statute in Jones, the Florida statute is peculiar in protecting commercial speech to a greater degree than noncommercial speech. Commercial speech is typically in a “subordinate position” in the scale of First Amendment values. U.S. v. Edge Broad. Co., 509 U.S. 418, 430, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993).
Catalano, 60 So.3d at 1145-46. We agree with this analysis and find, as did the Second District, that the statute is a content-based restriction on free expression, which violates protected First Amendment rights in a manner more intrusive than necessary. As a result, while the statute is not unconstitutionally vague, we agree with Catalano that the statute is unconstitutionally overbroad.

*1033
Good Faith

Finally, we must consider whether the police officer’s good faith reliance on the statute serves as an exception to the exclusionary rule. The exclusionary rule is a judicially-created remedy adopted to protect Fourth Amendment rights by deterring illegal searches and seizures. Davis v. United States, — U.S. -, -, 131 S.Ct. 2419, 2426, 180 L.Ed.2d 285 (2011). It is intended to deter police misconduct, not to remedy the prior invasion of a defendant’s constitutional rights. Because the primary purpose of the exclusionary rule is to “deter future unlawful conduct,” Stone v. Powell, 428 U.S. 465, 486, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the rule has not been applied in certain circumstances, such as when an officer acts in objectively reasonable reliance on a subsequently invalidated statute, Illinois v. Krull, 480 U.S. 340, 355, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).
Applying the objective standard of reasonableness mandated by Krull to the facts presented here, we conclude that a reasonable officer would not have known that section 316.3045(1)(a) was unconstitutional at the time that Montgomery’s vehicle was stopped for playing excessively loud amplified music. This is particularly true because in Davis, this Court upheld an earlier version of the statute against a constitutional challenge. Exclusion of the drugs and drug paraphernalia found in Montgomery’s car would have no deterrent effect on future police misconduct whatsoever. See United States v. Master, 614 F.3d 236, 243 (6th Cir.2010) (noting that Supreme Court’s recent jurisprudence “weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engaged in ‘deliberate, reckless, or grossly negligent conduct’ ”) (internal citation omitted)). Instead, applying the exclusionary rule in this case would deprive the State of the benefit of evidence obtained as a result of the officer’s good faith conduct. United States v. Leon, 468 U.S. 897, 907-08, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984) (“Particularly when law enforcement officers have acted in objective good faith ..., the magnitude of the benefit conferred on such guilty defendants [by the exclusionary rule] offends basic concepts of the criminal justice system.”). Accordingly, although we conclude that Montgomery suffered a Fourth Amendment violation, he is not entitled to suppression of the drugs and drug paraphernalia, and the suppression motion was properly denied. See United States v. Calandra, 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (recognizing that exclusionary rule’s primary purpose is to deter future unlawful police conduct, not repair it, and thus, not designed to safeguard personal constitutional right of party aggrieved).[3]
AFFIRMED.
PALMER and EVANDER, JJ., concur.

. After Davis, the Florida Legislature amended section 316.3045(1 )(a) by reducing the "plainly audible” distance from 100 feet to 25 feet. See ch. 05-164, § 9, Laws of Fla., eff. July 1, 2005.

. Our holding is consistent with decisions of other states upholding statutes that prohibit audible noises based on a distance standard. See, e.g., Moore v. City of Montgomery, 720 So.2d 1030, 1032 (Ala.Crim.App.1998) (holding ordinance that prohibited noise audible 5 feet from vehicle not unconstitutionally vague); People v. Hodges, 70 Cal.App.4th 1348, 83 Cal.Rptr.2d 619 (1999) (determining ordinance prohibiting vehicle’s sound system from operating where it could be heard 25 feet away not unconstitutionally vague); Davis v. State, 272 Ga. 818, 537 S.E.2d 327, 329 (2000) (finding that statute, which prohibits amplified sound from vehicle that is "plainly audible" at 100 feet, is not vague); State v. Medel, 139 Idaho 498, 80 P.3d 1099, 1103 (2003) (upholding ordinance as not unconstitutionally vague where it prohibited operating vehicle's sound system so that it is audible at distance of 50 feet); Commonwealth v. Scott, 878 A.2d 874 (Pa.Super.Ct.2005) (holding that city ordinance prohibiting sound reproduction devices in vehicles from being played so that they can be heard outside vehicle at distance of greater than 25 feet was not unconstitutionally vague as applied to defendant; police officer testified that he heard music emanating from defendant’s vehicle from approximately 50 feet away, which established clear violation of ordinance); Holland v. City of Tacoma, 90 Wash.App. 533, 954 P.2d 290, 295 (Wash. 1998) (finding ordinance not unconstitutionally vague as court noted that person of ordinary intelligence knows what is meant by prohibition of sound that is audible more than 50 feet away).

. Montgomery’s remaining point, challenging the search of his vehicle under Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), is without merit. See United States v. Davis, 598 F.3d 1259 (11th Cir.2010); Brown v. State, 24 So.3d 671, 680 (Fla. 5th DCA 2009), review denied, 39 So.3d 1264 (Fla.2010); see also Howard v. State, 59 So.3d 229, 231 & n. 2 (Fla. 2d DCA 2011); State v. Harris, 58 So.3d 408, 410-11 (Fla. 1st DCA), review granted, 61 So.3d 410 (Fla. 2011).